# MASSARO *v.* UNITED STATES

No. 01–1559.   Argued February 25, 2003—Decided April 23, 2003

KENNEDY, J., delivered the opinion for a unanimous Court.

*Herald Price Fahringer* argued the cause for petitioner. With him on the briefs were *Erica T. Dubno* and *Eugene Gressman.*

*Sri Srinivasan* argued the cause for the United States. With him on the brief were *Solicitor General Olson, Assistant Attorney General Chertoff, Deputy Solicitor General Dreeben,* and *Steven L. Lane.**

---

*\*David A. Lewis* and *David M. Porter* filed a brief for the National Association of Criminal Defense Lawyers et al. as *amici curiae* urging reversal.

JUSTICE KENNEDY delivered the opinion of the Court.

Petitioner, Joseph Massaro, was indicted on federal racketeering charges, including murder in aid of racketeering, 18 U. S. C. § 1962(d), in connection with the shooting death of Joseph Fiorito. He was tried in the United States District Court for the Southern District of New York. The day before Massaro's trial was to begin, prosecutors learned of what appeared to be a critical piece of evidence: a bullet allegedly recovered from the car in which the victim's body was found. They waited for several days, however, to inform defense counsel of this development. Not until the trial was underway and the defense had made its opening statement did they make this disclosure. After the trial court and the defense had been informed of the development but still during the course of trial, defense counsel more than once declined the trial court's offer of a continuance so the bullet could be examined. Massaro was convicted and sentenced to life imprisonment.

On direct appeal new counsel for Massaro argued the District Court had erred in admitting the bullet in evidence, but he did not raise any claim relating to ineffective assistance of trial counsel. The Court of Appeals for the Second Circuit affirmed the conviction. Judgt. order reported at 57 F. 3d 1063 (1995).

Massaro later filed a motion under 28 U. S. C. § 2255, seeking to vacate his conviction. As relevant here, he claimed that his trial counsel had rendered ineffective assistance in failing to accept the trial court's offer to grant a continuance. The United States District Court for the Southern District of New York found this claim procedurally defaulted because Massaro could have raised it on direct appeal.

The Court of Appeals for the Second Circuit affirmed. 27 Fed. Appx. 26 (1995). The court acknowledged that ineffective-assistance claims usually should be excused from procedural-default rules because an attorney who handles both trial and appeal is unlikely to raise an ineffective-

assistance claim against himself. Nevertheless, it adhered to its decision in *Billy-Eko* v. *United States,* 8 F. 3d 111 (1993). Under *Billy-Eko,* when the defendant is represented by new counsel on appeal and the ineffective-assistance claim is based solely on the record made at trial, the claim must be raised on direct appeal; failure to do so results in procedural default unless the petitioner shows cause and prejudice. Finding that Massaro was represented by new counsel on appeal, that his trial counsel's ineffectiveness was evident from the record, and that he had failed to show cause or prejudice, the Court of Appeals held him procedurally barred from bringing the ineffective-assistance claim on collateral review.

We granted certiorari. 536 U. S. 990 (2002). Petitioner now urges us to hold that claims of ineffective assistance of counsel need not be raised on direct appeal, whether or not there is new counsel and whether or not the basis for the claim is apparent from the trial record. The Federal Courts of Appeals are in conflict on this question, with the Seventh Circuit joining the Second Circuit, see *Guinan* v. *United States,* 6 F. 3d 468 (CA7 1993), and 10 other Federal Courts of Appeals taking the position that there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal, see, *e. g., United States* v. *Cofske,* 157 F. 3d 1, 2 (CA1 1998), cert. denied, 526 U. S. 1059 (1999); *United States* v. *Jake,* 281 F. 3d 123, 132, n. 7 (CA3 2002); *United States* v. *King,* 119 F. 3d 290, 295 (CA4 1997); *United States* v. *Rivas,* 157 F. 3d 364, 369 (CA5 1998); *United States* v. *Neuhausser,* 241 F. 3d 460, 474 (CA6), cert. denied, 534 U. S. 879 (2001); *United States* v. *Evans,* 272 F. 3d 1069, 1093 (CA8 2001), cert. denied, 535 U. S. 1029 (2002); *United States* v. *Rewald,* 889 F. 2d 836, 859 (CA9 1989), cert. denied, 498 U. S. 819 (1990); *United States* v. *Galloway,* 56 F. 3d 1239, 1240 (CA10 1995) (en banc); *United States* v. *Griffin,* 699 F. 2d 1102, 1107–1109 (CA11 1983); *United States* v. *Richardson,* 167 F. 3d 621, 626 (CADC), cert. denied, 528 U. S. 895 (1999).

We agree with the majority of the Courts of Appeals, and we reverse.

The background for our discussion is the general rule that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice. See *United States* v. *Frady,* 456 U. S. 152, 167–168 (1982); *Bousley* v. *United States,* 523 U. S. 614, 621–622 (1998). The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments. We conclude that requiring a criminal defendant to bring ineffective-assistance-of-counsel claims on direct appeal does not promote these objectives.

As Judge Easterbrook has noted, "[r]ules of procedure should be designed to induce litigants to present their contentions to the right tribunal at the right time." *Guinan, supra,* at 474 (concurring opinion). Applying the usual procedural-default rule to ineffective-assistance claims would have the opposite effect, creating the risk that defendants would feel compelled to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim. Furthermore, the issue would be raised for the first time in a forum not best suited to assess those facts. This is so even if the record contains some indication of deficiencies in counsel's performance. The better-reasoned approach is to permit ineffective-assistance claims to be brought in the first instance in a timely motion in the district court under § 2255. We hold that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.

In light of the way our system has developed, in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance. When an ineffective-assistance claim is brought on direct appeal, ap-

pellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose. Under *Strickland* v. *Washington*, 466 U. S. 668 (1984), a defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial. The evidence introduced at trial, however, will be devoted to issues of guilt or innocence, and the resulting record in many cases will not disclose the facts necessary to decide either prong of the *Strickland* analysis. If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it. The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse. See *Guinan, supra,* at 473 (Easterbrook, J., concurring) ("No matter how odd or deficient trial counsel's performance may seem, that lawyer may have had a reason for acting as he did. . . . Or it may turn out that counsel's overall performance was sufficient despite a glaring omission . . ."). The trial record may contain no evidence of alleged errors of omission, much less the reasons underlying them. And evidence of alleged conflicts of interest might be found only in attorney-client correspondence or other documents that, in the typical criminal trial, are not introduced. See, *e. g., Billy-Eko, supra,* at 114. Without additional factual development, moreover, an appellate court may not be able to ascertain whether the alleged error was prejudicial.

Under the rule we adopt today, ineffective-assistance claims ordinarily will be litigated in the first instance in the district court, the forum best suited to developing the facts necessary to determining the adequacy of representation during an entire trial. The court may take testimony from witnesses for the defendant and the prosecution and from the counsel alleged to have rendered the deficient performance.

See, *e. g., Griffin*, 699 F. 2d, at 1109 (In a § 2255 proceeding, the defendant "has a full opportunity to prove facts establishing ineffectiveness of counsel, the government has a full opportunity to present evidence to the contrary, the district court hears spoken words we can see only in print and sees expressions we will never see, and a factual record bearing precisely on the issue is created"); *Beaulieu* v. *United States*, 930 F. 2d 805 (CA10 1991) (partially rev'd on other grounds, *United States* v. *Galloway*, 56 F. 3d 1239 (CA10 1995). In addition, the § 2255 motion often will be ruled upon by the same district judge who presided at trial. The judge, having observed the earlier trial, should have an advantageous perspective for determining the effectiveness of counsel's conduct and whether any deficiencies were prejudicial.

The Second Circuit's rule creates inefficiencies for courts and counsel, both on direct appeal and in the collateral proceeding. On direct appeal it puts counsel into an awkward position vis-à-vis trial counsel. Appellate counsel often need trial counsel's assistance in becoming familiar with a lengthy record on a short deadline, but trial counsel will be unwilling to help appellate counsel familiarize himself with a record for the purpose of understanding how it reflects trial counsel's own incompetence.

Subjecting ineffective-assistance claims to the usual cause-and-prejudice rule also would create perverse incentives for counsel on direct appeal. To ensure that a potential ineffective-assistance claim is not waived—and to avoid incurring a claim of ineffective counsel at the appellate stage—counsel would be pressured to bring claims of ineffective trial counsel, regardless of merit.

Even meritorious claims would fail when brought on direct appeal if the trial record were inadequate to support them. Appellate courts would waste time and resources attempting to address some claims that were meritless and other claims that, though colorable, would be handled more efficiently if addressed in the first instance by the district court on col-

lateral review.   See, *e. g.*, *United States* v. *Galloway, supra*, at 1241 ("threat of . . . procedural bar has doubtless resulted in many claims being asserted on direct appeal only to protect the record . . . unnecessarily burden[ing] both the parties and the court . . .").   This concern is far from speculative.   The Court of Appeals for the Second Circuit, in light of its rule applying procedural default to ineffective-assistance claims, has urged counsel to "err on the side of inclusion on direct appeal," *Billy-Eko*, 8 F. 3d, at 116.

On collateral review, the Second Circuit's rule would cause additional inefficiencies.   Under that rule a court on collateral review must determine whether appellate counsel is "new."   Questions may arise, for example, about whether a defendant has retained new appellate counsel when different lawyers in the same law office handle trial and appeal.   The habeas court also must engage in a painstaking review of the trial record solely to determine if it was sufficient to support the ineffectiveness claim and thus whether it should have been brought on direct appeal.   A clear rule allowing these claims to be brought in a proceeding under § 2255, by contrast, will eliminate these requirements.   Although we could "require the parties and the district judges to search for needles in haystacks—to seek out the rare claim that could have been raised on direct appeal, and deem it waived," *Guinan*, 6 F. 3d, at 475 (Easterbrook, J., concurring)—we do not see the wisdom in requiring a court to spend time on exercises that, in most instances, will produce no benefit.   It is a better use of judicial resources to allow the district court on collateral review to turn at once to the merits.

The most to be said for the rule in the Second Circuit is that it will speed resolution of some ineffective-assistance claims.   For the reasons discussed, however, we think few such claims will be capable of resolution on direct appeal and thus few will benefit from earlier resolution.   And the benefits of the Second Circuit's rule in those rare instances are outweighed by the increased judicial burden the rule would

impose in many other cases, where a district court on collateral review would be forced to conduct the cause-and-prejudice analysis before turning to the merits. The Second Circuit's rule, moreover, does not produce the benefits of other rules requiring claims to be raised at the earliest opportunity—such as the contemporaneous objection rule—because here, raising the claim on direct appeal does not permit the trial court to avoid the potential error in the first place.

A growing majority of state courts now follow the rule we adopt today. For example, the Supreme Court of Pennsylvania recently changed its position to hold that "a claim raising trial counsel ineffectiveness will no longer be considered waived because new counsel on direct appeal did not raise a claim related to prior counsel's ineffectiveness." *Commonwealth* v. *Grant*, 572 Pa. 48, 67, 813 A. 2d 726, 738 (2002); see also *id.*, at 62–67, and n. 13, 813 A. 2d, at 735–738, and n. 13 (cataloging other States' case law adopting this position).

Although the Government now urges us to adopt the rule of the Court of Appeals for the Second Circuit, the Government took the opposite approach in some previous cases, arguing not only that claims of ineffective assistance of counsel could be brought in the first instance in a motion under § 2255, but that they must be brought in such a motion proceeding and not on direct appeal. See, *e. g., United States* v. *Cronic*, 466 U. S. 648, 667, n. 42 (1984). We do not go this far. We do not hold that ineffective-assistance claims must be reserved for collateral review. There may be cases in which trial counsel's ineffectiveness is so apparent from the record that appellate counsel will consider it advisable to raise the issue on direct appeal. There may be instances, too, when obvious deficiencies in representation will be addressed by an appellate court *sua sponte*. In those cases, certain questions may arise in subsequent proceedings under § 2255 concerning the conclusiveness of determinations made on the ineffective-assistance claims raised on direct ap-

peal; but these matters of implementation are not before us. We do hold that failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*