**UNITED STATES of America,**
**Appellee,**

v.

**Pablo ARNAU, Defendant—Appellant.**

**Docket No. 01–1569.**

United States Court of Appeals,
Second Circuit.

Nov. 6, 2003.

Howard M. Simms, New York, New York, for Appellant.

Joel L. Violanti, Assistant United States Attorney, Western District of New York (Michael A. Battle, United States Attorney), Buffalo, New York, for Appellee.

PRESENT: FEINBERG, KEARSE, and RAGGI, Circuit Judges.

## SUMMARY ORDER

Pablo Arnau was convicted after a jury trial of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and possessing with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). Arnau now appeals from a judgment of conviction sentencing him to a total of 144 months' incarceration. In urging reversal, Arnau argues that (1) the district court denied him a fair trial when, in addressing him prior to his direct testimony, it signaled to the jury its distrust of Arnau, and (2) his trial counsel was constitutionally ineffective in failing to object to the court's conduct or to seek a mistrial.[1]

1. *The Trial Court's Statements to Defendant*

A trial judge is no mere "umpire, there simply to see that the rules of the game [are] obeyed." *United States v. Filani,* 74 F.3d 378, 385 (2d Cir.1996). His "duty to see the law correctly administered" permits him to play an active role

---

1. These arguments were raised by newly appointed appellate counsel after this court relieved former counsel and denied the government's motion for summary affirmance. *See United States v. Arnau,* No. 01–1569 (2d Cir. May 3, 2003).

at trial, giving his own impressions of the evidence or questioning witnesses as an aid to the jury, subject, however, to the important caveat that he "not step across the line and become an advocate for one side." *Id.; accord United States v. Messina,* 131 F.3d 36, 39 (2d Cir.1997). A judge crosses that line when he engages in conduct that "target[s] the defendant's credibility." *Filani,* 74 F.3d at 385. Upon review of the entire record, *see United States v. Messina,* 131 F.3d at 39, we are satisfied that did not occur in Arnau's case.

The challenged colloquy consisted of three parts. The first replicated the court's exchange with all testifying witnesses, simply instructing Arnau about the use of the microphone and his ability to ask that questions be clarified or repeated. The second reviewed with Arnau his particular rights as a defendant, including his entitlement to a presumption of innocence and his right to remain silent. Plainly, neither of these exchanges targeted Arnau's credibility.

In the third part of the colloquy, the court advised Arnau, "This is your opportunity to testify under oath, and when you testify under oath, that is, as all witnesses are obligated to, to testify truthfully." Trial Trans. at 336. Subsequently, the court inquired, "Do you understand the rules with respect to truthfulness and the risk that you're exposing yourself to on cross examination as well as the questions that your attorney will ask you?" Arnau responded that he did.[2] *Id.* at 338.

Although it might have been preferable for this discussion to have occurred outside the presence of the jury, we are satisfied that the trial court carefully measured its words to avoid unfairly targeting Arnau's credibility. Notably, it identified the obli-

gation "to testify truthfully" as one applicable to "all witnesses." Further, the truthfulness remarks were brief and made in a context more likely to communicate to the jury the trial court's determination to ensure Arnau a fair trial than to impugn his credibility. This conclusion is reinforced by the court's closing instructions on credibility. Not only did the court emphasize the jury's singular role in evaluating credibility, it also took particular care not to single out Arnau, reminding the jury that, in summation, counsel had, "talked about [prosecution witness] Gandolfo's credibility, to some extent the defendant's credibility, and all of the witnesses who testified in this particular case." *Id.* at 511–12.

Thus, when the trial court's challenged remarks are viewed in the context of the record as a whole, they do not warrant reversal.

### 2. *Ineffectiveness of Counsel*

■ To succeed on a claim of ineffective assistance of counsel, a defendant must show both that counsel's representation was objectively unreasonable and that he was prejudiced by counsel's error or omission. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Clark v. Stinson,* 214 F.3d 315, 321 (2d Cir.2000). Recently, the Supreme Court had occasion to remind us that, "in most cases," ineffectiveness challenges to the performance of trial counsel are better heard under 28 U.S.C. § 2255 rather than on direct appeal because the district court is better situated "to develop[ ] the facts necessary to determining the adequacy of representation during an entire trial." *Massaro v. United States,*

---

**2.** This exchange, which was unique to Arnau, may have had its origins in an earlier discussion between the court and Arnau's trial

counsel, at which the latter reluctantly expressed concern about his client's intent to testify truthfully.

538 U.S. 500, 123 S.Ct. 1690, 1694, 155 L.Ed.2d 714 (2003). We heed this admonition, but note that our rejection of Arnau's challenge to the district court's statements on the merits necessarily precludes Arnau from satisfying the prejudice prong of the *Strickland* test. *See United States v. Acevedo,* 229 F.3d 350, 356 (2d Cir.2000). Accordingly, we similarly reject this claim but without prejudice to Arnau pursuing under § 2255 any other Sixth Amendment challenges he may have. *See generally United States v. Massaro,* 123 S.Ct. at 1694.

Because Arnau's arguments urging reversal are without merit, the judgment of conviction is hereby AFFIRMED.