# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-40516

United States Court of Appeals
Fifth Circuit

**FILED**

November 6, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

JORGE ERNESTO BLANCO-RODRIGUEZ,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:15-CR-1083-1

Before DAVIS, COSTA, and OLDHAM, Circuit Judges.

PER CURIAM:[*]

Jorge Ernesto Blanco-Rodriguez pleaded guilty to conspiracy to commit wire fraud. On appeal, Blanco-Rodriguez challenges his sentence. He argues that his counsel was ineffective for failing to advise him of the immigration consequences of his guilty plea. He also challenges the district court's imposition of a three-level sentencing enhancement under U.S.S.G. § 3B1.1(b)

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-40516

for his role as a manager or supervisor in the underlying criminal activity. As explained more fully below, we AFFIRM the district court's sentence.

I.

Blanco-Rodriguez pleaded guilty to conspiracy to commit wire fraud. The presentence report ("PSR") recommended a four-level increase in Blanco-Rodriguez's offense level under U.S.S.G. § 3B1.1(a) for his role as an organizer or leader in the conspiracy. In support of the enhancement, the PSR set forth the following facts:

> During the instant offense, the defendant's role involved receiving stolen credit/debit card information from unknown individuals in Russia, Ukraine, Romania, and/or China from May 2011 to May 2015. After fraudulently receiving the account numbers, the defendant sold the account information to co-conspirators in exchange for financial gain. Mary Vaquera and other individuals sent electronic payments to unknown coconspirators in Russia, Ukraine, Romania, and/or China, and foreign coconspirators paid the defendant $2 to $5 for each fraudulent account number he disseminated during the offense. Investigators were able to confirm the defendant's involvement regarding 12,000 such fraudulent access devices during the four-year period from May 2011 to May 2015. Furthermore, undercover investigators purchased 250 stolen credit/debit account numbers from the defendant from January 2015 [to] April 2015. Although the confirmed fraud in this case affected at least 100 financial institutions and exceeds $900,000, only 18 of the affected financial institutions reported or claimed pecuniary losses, resulting in a current total financial loss of $602,864.13.

Defense counsel filed written objections to the PSR, challenging the recommendation that Blanco-Rodriguez receive the four-level enhancement under § 3B1.1(a). Blanco-Rodriguez's counsel argued that Blanco-Rodriguez should have been given a four-level reduction in his offense level under U.S.S.G. § 3B1.2 for being a minimal participant rather than a four-level enhancement under § 3B1.1(a) for being an organizer or leader.

No. 17-40516

At sentencing, the Government presented testimony from Secret Service Special Agent Jose Obando, the lead investigator of the case. When questioned by the district court about Blanco-Rodriguez's role, Agent Obando stated, "I'd be speculating a little bit, but he's kind of more like maybe middle tier. He's kind of like -- he buys in bulk and then resells and makes profit."

The district court initially stated that it considered Blanco-Rodriguez "sort of a lone wolf," but the Government argued that the evidence was to the contrary. The Government maintained that Blanco-Rodriguez "would have money sent in other people's names from other countries which require[ed] them to pick up the money, and then whatever portion that [Blanco-Rodriguez] profit[ed] on w[ould] be sent to him." According to the Government, "there [were] more people involved and [Blanco-Rodriguez] caus[ed] their involvement."

Defense counsel responded that 12,000 credit or debit card accounts constituted "a very small percentage" of the total data breach and that "almost anyone can" do what Blanco-Rodriguez did because it is easy to obtain that information on the Internet. Counsel further contended that Blanco-Rodriguez was "just taking advantage of information that[] [was] available on the Internet" and that he was entitled to a mitigating role reduction.

The district court disagreed that Blanco-Rodriguez was entitled to a mitigating role reduction, but again described him as "somewhat of a lone wolf." In doing so, the district court explained that:

> [Blanco-Rodriguez] knows how to access these counterfeit numbers, he purchased some, he resells them, he gets paid. And some of what he gets paid, I believe, my impression is some of this is bought on credit. I get paid, you get paid. So he's having money deposited in accounts of people that he owes money to.

The district court ultimately decided that the four-level enhancement under § 3B1.1(a) was not warranted. Instead, the district court imposed a three-level

## No. 17-40516

enhancement under § 3B1.1(b), finding that Blanco-Rodriguez "was [a] supervisor of . . . five or more" participants.

With a total offense level of 33 and a criminal history category of I, Blanco-Rodriguez's guidelines range was 135 to 168 months of imprisonment. The district court sentenced Blanco-Rodriguez at the bottom of the guidelines range to 135 months of imprisonment. We review the Appellant's arguments below.

## II.

## A.

We consider first Blanco-Rodriquez's ineffective-assistance-of-counsel claim. We observe that the favored forum for such a claim is a 28 U.S.C. § 2255 proceeding.[1] "When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim."[2] Thus, as a general rule, we do not consider ineffective-assistance claims on direct appeal.[3] We take up "claims of inadequate representation on direct appeal only in rare cases where the record" permits a fair evaluation of the claims.[4] A case falls within the parameters of the general rule (against consideration on appeal) when the record does not reveal the reasons for trial counsel's decisions or shed light on alternative strategies that might have been employed.[5]

Here, Blanco-Rodriguez does not present any justification for an "exception to [the] general rule of non-review" on direct appeal.[6] Accordingly,

---

[1] *Massaro v. United States*, 538 U.S. 500, 504–09 (2003).

[2] *Id.* at 504.

[3] *United States v. Isgar*, 739 F.3d 829, 841 (5th Cir. 2014) (noting that the record at hand offered insufficient information concerning trial counsel's motivations).

[4] *United States v. Higdon*, 832 F.2d 312, 314 (5th Cir. 1987).

[5] *United States v. Garcia*, 567 F.3d 721, 729 (5th Cir. 2009) (labeling the ineffective assistance claim premature).

[6] *United States v. Stevens*, 487 F.3d 232, 245 (5th Cir. 2007).

we decline to consider his ineffective-assistance-of-counsel argument on direct appeal without prejudice to Blanco-Rodriguez's right to assert it on collateral review.[7]

## B.

With respect to Blanco-Rodriguez's argument that the district court erred in finding him to be a manager or supervisor under § 3B1.1(b) and imposed a three-level enhancement, we review this factual finding for clear error.[8]  A factual finding is not clearly erroneous if it is plausible in light of the record as a whole.[9]  We will not deem a factual finding clearly erroneous unless a review of the evidence leaves us with the "definite and firm conviction that a mistake has been committed."[10]

Under § 3B1.1(b), a defendant's base offense level may be increased three levels "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive."[11]  To qualify for an adjustment under this section, "the defendant must have been the . . . manager[] or supervisor of one or more other participants."[12]  The commentary to the Sentencing Guidelines advises that an upward departure may be warranted for a defendant who did not exercise control over another participant but "nevertheless exercised management responsibility over the property, assets, or activities of a criminal

---

[7] *See Isgar*, 739 F.3d at 841.

[8] *See United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008); *United States v. Rose*, 449 F.3d 627, 633 (5th Cir. 2006).

[9] *Cisneros-Gutierrez*, 517 F.3d at 764.

[10] *Rose*, 449 F.3d at 633 (internal quotation marks and citation omitted).

[11] *See* U.S.S.G. § 3B1.1(b).

[12] *See id.*, comment. (n.2).

organization."[13]  We have approved the imposition of this enhancement under the circumstances recited in the commentary.[14]

The record supports the district court's finding that Blanco-Rodriguez was a manager or supervisor under this guideline.  Blanco-Rodriguez set the underlying criminal scheme in motion by purchasing the stolen credit card numbers from his contacts in foreign countries.  He then sold the card numbers to his contacts in this country to use or to obtain retail merchandise.  Blanco-Rodriguez directed the buyers of these card numbers to wire money to representatives of the original sellers of the stolen numbers who confirmed payment to Blanco-Rodriguez.  This suggests a finding that Blanco-Rodriguez was a manager of the assets and activities of this criminal enterprise.  Accordingly, the district court did not clearly err in applying the § 3B1.1(b) enhancement.

### III.

Based on the foregoing reasons, we AFFIRM the district court's sentence.

**AFFIRMED.**

---

[13] *Id.*

[14] *See United States v. Delgado*, 672 F.3d 320, 345 (5th Cir. 2012) (en banc); *Rose*, 449 F.3d at 633 & n.20; *United States v. Lopez-Urbina*, 434 F.3d 750, 767 (5th Cir. 2005).